# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Victor Odiaga<br><br>    Petitioner<br><br>v.<br><br>D.W. Neven, et al.,<br><br>    Respondents | 2:14-cv-01251-JAD-NJK<br><br>**Order of Dismissal** |

    Petitioner Victor Odiaga, a prisoner in the custody of the Nevada Department of Corrections, brings this habeas action under 28 U.S.C. § 2254 to challenge his 2012 Nevada state convictions for theft.[1] After evaluating his claims on their merits, I deny Odiaga's petition for a writ of habeas corpus, dismiss this action with prejudice, and deny a certificate of appealability.

## I. Background

    Odiaga and his co-defendants engaged in a scheme to steal people's money. Odiaga convinced a would-be victim that he would pay off their bills (*i.e.*, utility bills) by writing a check to the company to whom the bill was due in exchange for cash payments from the victim of fifty cents on the dollar. After a victim agreed to this too-good-to-be-true deal, Odiaga mailed a check to the company, which, in turn, provided him with a receipt showing that the bill had been paid. Odiaga would then take this receipt to the victim, who would sometimes also call the company to confirm that the bill had been paid and then give Odiaga the cash. The checks bounced when the companies tried to cash them because they were tied to a nonexistent bank account. But by then, Odiaga was gone.[2]

    Following a jury trial, Odiaga was convicted on April 26, 2012, of seven counts of theft

---

[1] ECF No. 6.

[2] ECF No. 11-4.

and sentenced to seven concurrent terms of 8–20 years.[3] He appealed, and on February 13, 2013, the Nevada Supreme Court affirmed.[4] On June 27, 2013, Odiaga filed a post-conviction petition for a writ of habeas corpus in state district court.[5] It was denied.[6] The Nevada Supreme Court affirmed the denial, and the remittitur issued on June 10, 2014.[7]

On July 26, 2014, Odiaga mailed this petition for a writ of habeas corpus. He makes three claims: first, that there was insufficient evidence to support two of his convictions; second, that his counsel was ineffective for ten reasons; and third, that his first attorney had a conflict of interest.[8]

## II. Standard of review

When a state court has adjudicated a claim on its merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt."[9] Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect.[10] Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court or (2) was based on an unreasonable

---

[3] ECF No. 12-43.

[4] ECF No. 13-70.

[5] ECF No. 14-78.

[6] ECF No. 14-98.

[7] ECF No. 15-104; ECF No. 15-105.

[8] ECF No. 6 at 3–17.

[9] *Cullen v. Pinholster*, 563 U.S. 170 (2011).

[10] *Id.* at 202.

2

determination of the facts in light of the evidence presented at the state court proceeding.[11]

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result.[12] A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions.[13] The Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them.[14] And "a federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous."[15] A decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."[16] When a state court's factual findings are challenged, the "unreasonable determination of fact" clause of 28 U.S.C. § 2254(d)(2) controls,[17] which requires federal courts to be "particularly deferential" to state court factual determinations.[18] This standard is not satisfied by a mere showing that the

---

[11] *Id.* at 181–88.

[12] *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003).

[13] *Id.*

[14] *Id.*

[15] *Id.* at 16.

[16] *See, e.g.*, *id.* at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

[17] *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).

[18] *Id*.

3

state court finding was "clearly erroneous."[19] Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.[20]

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief.[21]

### III. Discussion

**A. Ground 1: Insufficient Evidence**

In Count 1, Odiaga challenges two of his theft convictions on the grounds that the State adduced insufficient evidence at trial to support them. The theft statute under which he was convicted prohibits taking the "property . . . of another person by a material representation with intent to deprive that person of the property."[22] These two counts follow the same fact pattern: Odiaga stole property that was in the physical possession of Maria Camacho but belonged to the Flamingo Banquet Hall, which had entrusted Camacho with it for the time being. In his federal habeas petition, Odiaga argues that the State failed to adduce any evidence that he intended to deprive the lawful owner of the property, Flamingo Banquet Hall, of the property.[23] Necessarily, then, Odiaga's sufficiency-of-the-evidence challenge is premised on interpreting the state-law phrase "property . . . of another person" as property belonging to, but not merely lawfully

---

[19] *Id.* at 973.

[20] *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

[21] *Pinholster*, 563 U.S. at 569.

[22] Nev. Rev. Stat. § 205.0832(1)(c).

[23] *See* ECF No. 6 at 3.

possessed by, said person.

On direct appeal, the Nevada Supreme Court rejected that interpretation. It held: "Because the victim was an authorized person to receive money on behalf of the Flamingo, the property was properly in the victim's possession. Since the victim had a right to possess the money . . . there was sufficient evidence to convict him . . . ."[24] In essence, then, the Nevada Supreme Court interpreted the Nevada statute to cover the theft of property that did not belong to the victim but was nonetheless lawfully in the victim's possession.

Barring some set of circumstances far afield from those presented here, "[s]uch an inquiry [into the correctness of a state court's interpretation of state law] . . . is no part of a federal court's habeas review of a state conviction."[25] Indeed, the Supreme Court has explained time and time again that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."[26]

Ground 1 provides no basis for habeas relief.

**B.    Ground 2: Ineffective assistance of counsel**

Odiaga raises ten claims of ineffective assistance of counsel. To succeed on an ineffective-assistance-of-counsel claim, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[27] I evaluate counsel's performance from the lawyer's perspective at the time, and I begin with a strong presumption that counsel's conduct fell within the wide range of reasonable conduct.[28] When a state court has reviewed a *Strickland* claim, a federal court's habeas review is "doubly

---

[24] ECF No. 13-70 at 1.

[25] *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

[26] *Id.* at 67–68.

[27] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[28] *See, e.g.*, *Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004).

5

deferential"—the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d).[29]

### 1. Ground 2(A)

Odiaga claims that counsel was ineffective for "failing to properly question witnesses, raise objections, or object to duplicative charges at the preliminary hearing."[30] The Nevada Supreme Court applied the proper *Strickland* framework.[31] It held that counsel's performance was not deficient and that, even if it were, no prejudice resulted. It recognized that counsel cross-examined witnesses and that the low burden that the State has at this preliminary hearing would have been met even if counsel had acted as Odiaga desired.

Odiaga challenges these factual determinations as well as the fact that the Nevada Supreme Court never held an evidentiary hearing to determine the veracity of his claims. In support of his claim, Odiaga points to two specific alleged errors made by trial counsel. Odiaga claims that counsel did not investigate the fact that each victim "received an authentic, legitimate receipt . . . showing that the bill had been paid" and that each victim "called [their respective companies] to verify [that] their bills had been paid."[32] But these facts were essentially made irrelevant by the scheme that the State alleged Odiaga devised. A crucial part of that scheme was that, initially, Odiaga would provide legitimate receipts and the bills would seem to have been paid in full. That was because Odiaga "paid" these victims' bills with checks from bank accounts that were already overdrawn and thus, once the company tried to cash the checks, they would bounce.[33] Testimony about these receipts or phone calls would therefore not have helped Odiaga stave off a probable-cause finding, and counsel did not err by not pursuing them further.

---

[29] *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011).

[30] ECF No. 6 at 7.

[31] *See* ECF No. 15-104 at 1.

[32] ECF No. 14-78; *see also* ECF No. 6 at 8 (citing ECF No. 14-78).

[33] *See, e.g.*, ECF No. 11-8 at 6–9, 12–14, 18–22, 24–25, 33–36, 44–45.

Odiaga's passing references to counsel's failure to "raise objections" or "object to duplicative charges" are not explained, and he thus failed to carry his burden of establishing either *Strickland* prong.

Ground 2(A) provides no basis for habeas relief.

**2. Ground 2(B)**

Odiaga claims that trial counsel was ineffective for "failing to investigate the case or discover receipts showing the victims' bills had been paid."[34] The Nevada Supreme Court applied the proper *Strickland* framework.[35] It held that counsel's performance was not deficient and that, even if it were, no prejudice resulted. This claim has the same logical flaw as Ground 2(A), and fails for the same reason.

Ground 2(B) provides no basis for habeas relief.

**3. Ground 2(C)**

Odiaga claims that trial counsel was ineffective for "failing to file pretrial motions."[36] The Nevada Supreme Court applied the proper *Strickland* framework.[37] It rejected the claim because Odiaga failed to identify "any additional motions that objectively reasonable counsel would have filed" and thus failed to carry his burden of demonstrating "a reasonable probability of a different outcome at trial had counsel filed additional pretrial motions."[38] In his federal habeas petition, Odiaga claims that, "although he did not specifically state that" counsel should have filed a motion to suppress the identifications made by several of the victims, his general statement that counsel should have "filed additional pretrial motions" should have made it

---

[34] ECF No. 6 at 8.

[35] *See* ECF No. 15-104 at 2.

[36] ECF No. 6 at 8.

[37] *See* ECF No. 15-104 at 3.

[38] *Id.*

"obvious."[39]

Even if I so construed Odiaga's state petition, he did not give any legal ground for why a motion to suppress the identifications would have been granted. He has thus failed to establish either *Strickland* prong.

Ground 2(C) provides no basis for habeas relief.

### 4. Ground 2(D)

Odiaga claims that trial counsel was ineffective for "failing to question witnesses regarding their misidentifications during their photo line-up."[40] Odiaga argues that counsel should have more thoroughly cross-examined the State's witnesses in light of the fact that many of them identified another individual in photo line-ups. The Nevada Supreme Court applied the proper *Strickland* framework.[41] It held that counsel's performance was not deficient and that, even if it were, no prejudice resulted in light of the "overwhelming evidence" demonstrating Odiaga's guilt.

The Nevada Supreme Court's determination was neither an unreasonable application of Supreme Court law nor an unreasonable determination of fact. First, the Nevada Supreme Court noted that the trial testimony revealed that the other man the victims identified appeared substantially similar to Odiaga.[42] Second, the scheme Odiaga participated in involved multiple people, and the identified man was another suspect who made contact with the victims as part of the scheme.[43] That some of the victims identified the other man, then, does not carry much weight. Third, of the seven victims, only two failed to identify Odiaga in the photo line-up.[44]

---

[39] ECF No. 6 at 9–10.

[40] *Id.* at 10.

[41] *See* ECF No. 15-104 at 3.

[42] *See id.*; ECF No. 12-34 at 154–56.

[43] *See, e.g.*, ECF No. 11-8 at 19, 34–39; ECF No. 12-33 at 18; ECF No. 12-38 at 10–12.

[44] *See* ECF No. 11-4.

8

And one of those had been, rather unsuccessfully, subject to cross-examination about her lack of identification of Odiaga at a preliminary hearing.[45] The other one was also rather unsuccessfully cross-examined about his lack of identification, this time at trial.[46] Both identified Odiaga at trial. In sum, eight victims identified Odiaga in photo line-ups, twelve identified him in court during the preliminary proceeding, and nine identified him in court at trial.[47] Lastly, one victim had taken a photograph of Odiaga's face, which was presented to the jury.[48] Therefore, the Nevada Supreme Court's determination that Odiaga did not establish prejudice in light of the "overwhelming" evidence that he was properly identified and guilty was not unreasonable.

Ground 2(D) provides no basis for habeas relief.

### 5. Ground 2(E)

Odiaga next claims that trial and appellate counsel were ineffective for "failing to argue that there was insufficient evidence to prove that he knowingly took the victims' money or that he had the intent to take their money."[49] Odiaga's claim is entirely based on his supposition that "[w]hen the seven charges against your client are theft," "ineffectiveness should be presumed" when counsel does "not contest[] a crucial element of the charge [i.e., intent]."[50] The Nevada Supreme Court applied the proper *Strickland* framework and held that Odiaga failed to demonstrate either deficiency or prejudice.[51] Indeed, counsel need not challenge every element of a criminal conviction to be effective; *Strickland* leaves room for tactical decisions. Odiaga's

---

[45] *See* ECF No. 11-8 at 19–20, 28–32.

[46] *See* ECF No. 12-38 at 11–12.

[47] *See* ECF No. 11-4 at 10; ECF No. 11-8 at 12, 19–20, 47; ECF No. 11-9 at 8–9, 32–33, 42, 54, 77–79, 82, 88–89; ECF No. 11-10 at 8–9, 19–20; ECF No. 12-34 at 30, 45, 106, 116, 128, 146, 158–59; ECF No. 12-38 at 6–7, 12, 16–18.

[48] *See* ECF No. 12-38 at 122–23.

[49] ECF No. 6 at 11.

[50] *Id.*

[51] *See* ECF No. 15-104 at 4.

9

bare allegation thus fails.

Ground 2(E) provides no basis for habeas relief.

### 6. Ground 2(F)

Odiaga then claims counsel was ineffective for "failing to argue that the State withheld exculpatory evidence in the form of receipts showing that the bills had been paid and a photograph from a bank, which [Odiaga] asserted depicted a different person conducting the fraudulent transaction."[52] The Nevada Supreme Court rejected this claim "as this evidence was not withheld, was not exculpatory, and was presented by the State during trial as evidence of appellant's guilt."[53]

For a *Brady* claim to be viable, there must be a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[54] First off, the receipts were presented at trial.[55] And even if they were not, they fail to aid Odiaga for the reasons explained in Part III.B.1, above. There is a factual dispute as to what, exactly, was in the photograph. Odiaga claims it was a picture of another person; the victim who took the photograph says it was of the other man's vehicle.[56] Even if the picture were of the other man and the witnesses testified that the other man met with them at Chase Bank where the property was handed over, these same victims still identified Odiaga as the person they had previously dealt with as part of the multi-stage scheme.[57] In light of the marginal benefit, if any, that this evidence provides Odiaga and the other evidence of guilt, there is not a reasonable probability that a different outcome would have resulted had this evidence been turned over—and counsel

---

[52] ECF No. 6 at 11.

[53] ECF No. 15-104 at 4.

[54] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[55] *See* ECF No. 12-41.

[56] *Compare* ECF No. 6 at 11, *with* ECF No.11-8 at 34–39.

[57] *See* ECF No. 11-4 at 2, 10; ECF No. 11-8 at 34–39.

was surely not constitutionally ineffective for so concluding and not raising the issue.

Ground 2(F) provides no basis for habeas relief.

**7.    Ground 2(G)**

Odiaga claims that counsel was ineffective for not advising him to testify.[58] The Nevada Supreme Court applied the proper *Strickland* framework.[59] It rejected his claim because he failed to demonstrate either *Strickland* prong because of his prior criminal history involving similar fraudulent activities that could have been brought up on cross-examination and because the district court conducted a colloquy with Odiaga during which Odiaga acknowledged his right to testify and that it was his decision. Even if I were to credit Odiaga's statements in his petition that his counsel did not explain his right to testify,[60] Odiaga's only claim of prejudice is based on testifying to give himself a defense about the intent element. He does not explain what he would have said, or why the jury would have believed it in light of his history of similar convictions that would have been raised on cross-examination. Therefore, Odiaga has not met his burden of demonstrating prejudice. He goes on to explain that the Nevada Supreme Court should have examined this claim in conjunction with the fact that he claimed he was incompetent and that he did not understand the waiver of his speedy trial rights. He provides no basis for this assertion, and I can find none.

Ground 2(G) provides no basis for habeas relief.

**8.    Ground 2(H)**

Odiaga claims that counsel was ineffective "for failing to object when the State changed

---

[58] *See* ECF No. 6 at 12.

[59] *See* ECF No. 15-104 at 4–5.

[60] *See Blackledge v. Allison*, 413 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); ECF No. 12-38 at 38–39.

11

its theory of the case" when it amended the charges against him.[61] The Nevada Supreme Court applied the proper *Strickland* framework and held that Odiaga failed to demonstrate either deficiency or prejudice.[62] Because Odiaga does not explain what grounds counsel had for objecting to the State's change of the theory of its case, he has failed to demonstrate either *Strickland* prong.

Ground 2(H) provides no basis for habeas relief.

**9.    Ground 2(I)**

Odiaga claims his counsel was ineffective "for failing to argue that Odiaga was incompetent."[63] The Nevada Supreme Court applied the proper *Strickland* framework and held that Odiaga failed to demonstrate either deficiency or prejudice.[64] Because Odiaga does not explain why he would have succeeded on an argument based on being incompetent to stand trial, he has failed to demonstrate either *Strickland* prong.

Ground 2(I) provides no basis for habeas relief.

**10.    Ground 2(J)**

Odiaga claims his counsel was ineffective "because counsel advised Odiaga to waive his speedy trial rights [at arraignment] but did not ensure that Odiaga understood those rights prior to the waiver."[65] The Nevada Supreme Court applied the proper *Strickland* framework and held that Odiaga failed to demonstrate either deficiency or prejudice.[66]

To demonstrate prejudice on this prong, Odiaga had to show that not only would he have invoked his speedy trial rights after further consultation with his attorney, but also that doing so

---

[61] *See* ECF No. 6 at 13.

[62] *See* ECF No. 15-104 at 5.

[63] ECF No. 6 at 13.

[64] *See* ECF No. 15-104 at 5–6.

[65] ECF No. 6 at 14.

[66] ECF No. 15-104 at 6.

would have resulted in a different outcome. He argues only that a speedier trial would have prevented the State from adding charges on which he was eventually convicted and prevented the State from preparing its witnesses as well as it did. Not only does Odiaga not demonstrate why he would have exercised his speedy trial right, but he utterly fails to show why the State could not have amended the charges within the sixty-day window given to the state after arraignment[67] or how the State's witnesses' testimony changed at all between the arraignment and the trial, why the State would not have been able to affect the same changes in the shorter time frame, or why there was any probability that these changes affected the outcome of the proceedings.[68] Odiaga thus fails to establish prejudice.

Ground 2(J) provides no basis for habeas relief.

**C.  Ground 3: Conflict-free counsel**

Odiaga's final claim alleges a violation of his "Sixth Amendment right to be free of conflict-free counsel."[69] Odiaga claimed that the initial counsel that represented him at the preliminary hearing from the Clark County Public Defender's Office had a conflict of interest because the office represented one of his co-defendants.[70] He claimed that he "repeatedly informed his counsel of the conflict" but that it was not until several months later that his attorney filed a motion to withdraw and the district court appointed substitute counsel who represented Odiaga at trial.[71] The Nevada Supreme Court held that Odiaga "failed to demonstrate an actual conflict of interest or that his counsel had divided loyalties."[72]

The U.S. Supreme Court has held that to prevail on a claim that the right to counsel was

---

[67] *See* Nev. Rev. Stat. § 178.556.

[68] *Compare* ECF No. 11-8 to 11-10, *with* ECF No. 12-34, 12-38.

[69] ECF No. 6 at 16 (citing ECF No. 13-78).

[70] *See id.* (citing ECF No. 13-78).

[71] *Id.* (citing ECF No. 13-78).

[72] ECF No. 15-104 at 7.

13

violated by a conflict of interest, a petitioner must show that there was an actual conflict of interest, meaning that "his counsel actively represented conflicting interests."[73] He must also show that the conflict of interest "actually affected the adequacy of his representation."[74] Odiaga does not explain what part of this fact pattern violates clearly established law or why he suffered any prejudice from that violation, as required. In fact, in denying Odiaga's claim, the Nevada Supreme Court cited one of its prior opinions for the standard, which in turn cited the proper Supreme Court standard.[75] Summary allegations are insufficient, no prejudice is apparent from the record, and thus Ground 3 provides no basis for habeas relief.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that **Odiaga's petition for a writ of habeas corpus is DENIED** on the merits, and this action is **DISMISSED with prejudice**.

Because reasonable jurists would not find this decision to be debatable or incorrect, IT IS FURTHER ORDERED that a **certificate of appealability is DENIED**. The Clerk of Court is directed to **enter judgment, in favor of respondents and against Odiaga, dismissing this action with prejudice**.

DATED August 8, 2017.

_____
Jennifer A. Dorsey
United States District Judge

---

[73] *Mickens v. Taylor*, 535 U.S. 162, 175 (2002) (citation omitted).

[74] *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980).

[75] *See* ECF No. 15-104 at 7 (citing *Clark v. State*, 831 P.2d 1374, 1376 (Nev. 1992) (citing *Sullivan*)).